IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE LANDA, Individually, and on Behalf of All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 1:20-cv-05691 |
| v. | )<br>)<br>) |
| MENASHA PACKAGING COMPANY, LLC, | )<br>)<br>) |
| Defendant. | ) |

**PLAINTIFF'S MOTION FOR LIMITED ADDITIONAL DISCOVERY**

From the onset of this case, Defendant Menasha Packaging Company, LLC ("Menasha" or "Defendant") has categorically denied any involvement whatsoever in the use of the biometric timekeeping system located at its facility where Plaintiff Jose Landa ("Plaintiff") scanned his finger each day he worked for purposes of authentication and to record his time. Rather, Defendant has continuously pointed the finger at another entity, Ron's Staffing, the company that staffed Plaintiff to work at its facility, as the *only* entity that had *any* involvement in the implementation and use of the biometric timekeeping system at issue. Throughout this litigation, Defendant has repeatedly represented, without support, that it had absolutely nothing to do with the systems, and these bare representations have dramatically thwarted Plaintiff's ability to explore, vet, and test its denials in discovery.

But as recent events have revealed, Defendant's lack of involvement isn't so absolute after all. Contrary to Defendant's denials over the course of several years, Defendant was identified by NOVAtime Technology, Inc. ("NOVAtime"), the manufacturer of the biometric timekeeping

1

system used by Plaintiff while working at Defendant's facility, as its "client," Defendant was directly involved with purchasing the migration of software and the reconfiguration of the timekeeping system, and Defendant was provided heightened credentials to access the NOVAtime portal where the data collected from the timekeeping system is sent, including biometric data. Now that Defendant's actual involvement with the biometric timekeeping system has finally been revealed, albeit through third-party discovery, Defendant can no longer hide behind its deceptive tales and must be held accountable for its unquestionable failure to comply with the Biometric Information Privacy Act's ("BIPA"), 740 ILCS § 14/1, *et seq.*, notice and consent requirements before it collected, used, otherwise obtained, possessed, and disseminated Plaintiff's and other workers' biometric identifiers and biometric information (collectively, "biometric data"). Plaintiff's motion for limited additional discovery, brought for the sole purpose of producing documents (albeit from a separate case) pertaining to the biometric timekeeping system at issue, the NOVAtime portal and the relevance of the access credentials, and depositions of up to three witnesses with access to the NOVAtime portal, should be granted.

I. **PROCEDURAL BACKGROUND**

Defendant propounded its Rule 26(a)(1) Initial Disclosures on April 18, 2022, and identified documents it may use to support its defenses including personnel records, relevant policies and procedures, and documents obtained from third parties, including staffing companies such as Ron's Staffing. (*See* Exhibit 1, Defendant's Rule 26(a)(1) Initial Disclosures.) Plaintiff served Defendant with his first set of interrogatories and requests for production on April 22, 2022. Plaintiff's discovery requests were premised upon Defendant identifying its policies and protocols regarding the use of biometric timekeeping systems at its facilities, producing service agreements with the staffing companies that provided services during the applicable statutory period, and

2

relevant communications both internally and with its staffing companies regarding its protocol on the use of biometric timekeeping systems and related documents.

On July 15, 2022, Defendant served its responses and denied possession of all relevant and basic documents pertaining to the claims and defenses in this case. (*See* Exhibit 2, Defendant's Discovery Response.) Shortly thereafter, the Parties conferred but Plaintiff's efforts to resolve the issues regarding Defendant's grossly deficient discovery responses was unsuccessful, as Defendant refused to provide basic information such as whether it performed an actual investigation to inform its discovery responses and further refused to provide any information about the biometric timekeeping system that Plaintiff used at its facilities each day he worked. (*See* Exhibit 3, July 15, 2022, to August 31, 2022, Email Correspondence.) Defendant also acknowledged the existence of responsive documents not produced, notified Plaintiff it had no intention of producing class-wide information, and confirmed its ESI search for requested communications was limited to a single custodian unilaterally selected by Defendant, but would not verify the search terms or time period used to conduct the search. (*Id.*)

On August 11, 2022, Plaintiff took the deposition of Defendant's corporate witness Cathy Penrod, the Director of Workforce Management.[1] As Plaintiff suspected, Penrod's testimony confirmed the existence of a wealth of available outstanding documents relevant to the claims and defenses that Defendant simply did not search for, much less produce. After a series of additional conferrals, and in light of Plaintiff's stated intention to file an amended complaint to correct a clerical error in the class definition, Defendant informed Plaintiff it would not address the

---

[1] Despite having Plaintiff's discovery requests for nearly four months, it was not until a few hours before Penrod's deposition that Defendant produced five heavily redacted documents as its total document production and unilaterally marked them "confidential." (*See* Exhibit 4, Menasha 000001-000005.)

discovery issues until the Court ruled on Plaintiff's motion to amend. (*See* Exhibit 3, July 15, 2022, to August 31, 2022, Email Correspondence; *see also* Dkt. 62.)

On September 1, 2022, Plaintiff filed his motion for leave to amend his complaint, and the Court stayed discovery pending ruling. (Dkts. 56, 63.) On June 26, 2023, the Court granted Plaintiff's motion for leave to amend and Plaintiff filed his Second Amended Class Action Complaint that same day. (Dkts. 89, 90.)

With the Court's ruling, on September 26, 2023, Plaintiff issued his second set of written discovery, and Defendant served its responses on November 7, 2023. Consistent with its previous responses, Defendant's responses to Plaintiff's second set of requests were also grossly deficient. (*See* Exhibit 5, Defendant's Objections and Responses to Plaintiff's Second Set of Discovery.) Despite the Parties' conferrals over the course of the next several weeks and Plaintiff's repeated requests for supplemental responses (*see* Exhibit 6, November 28, 2023, to January 12, 2024, Email Correspondence), Defendant waited until three days before the Court's scheduled deadline to file motions to compel to produced "supplemental" responses to Plaintiff's first and second sets of discovery requests. (*See* Exhibit 7, Defendant's Supplemental Responses to Plaintiff's First and Second Set of Discovery.) However, Defendant again failed to address any of the issues the Parties discussed at length during their conferrals. (*Id.*) The next day, on January 10, 2024, just two days before the motion to compel deadline, Defendant produced five supplemental documents, none of which had any relevance to any claim or defense in the case. (*See* Exhibit 8, Menasha 000006-000010.) Given the Court's then-deadline of January 12, 2024, to file a motion to compel as well as Defendant's well-documented pattern of noncompliance with discovery, Plaintiff filed a motion to compel. (Dkt. 115.)

4

During the hearing on Plaintiff's motion to compel in which it was ultimately denied, Defendant informed the Court of its intention to file a motion to bifurcate discovery. (Dkt. 118; *see also* Dkt. 126, Transcript of January 17, 2024, Hearing, p. 7:12-13.) Given Defendant's representation that it was not involved with the use of the biometric timekeeping system and its purported lack of access to the biometric data collected from the system, the Cout was receptive to this approach. (Dkt. 126, Transcript of January 17, 2024, Hearing, p. 22:16-21.) The Court instructed Plaintiff to hold off on filing a subsequent motion to compel until the motion to bifurcate was addressed. (*Id.,* pp. 25:23-26:3; 27:6-12.) On February 2, 2024, Defendant filed its motion to bifurcate discovery (Dkt. 121), which the Court granted on March 4, 2024.[2] (Dkt. 128.) The Court held a status hearing on April 9, 2024, at which time it addressed the Parties' respective positions on the initial stage of bifurcated discovery and directed them to engage in further discussions to address the issues Plaintiff raised pertaining to Defendant's deficient bifurcated discovery responses. (Dkt. 133.) As directed, the Parties met and conferred shortly thereafter, which provided Defendant ample time to address the issues discussed. Consistent with its previous actions though, Defendant waited until April 25, 2024, the day before the motion to compel deadline, before finally responding, in which it only produced a service agreement with Ron's Staffing that was executed *after* Plaintiff left his position with Defendant (and all attachments were omitted). (*See* Exhibit 9, April 17, 2024, to April 25, 2024, Email Correspondence.) Given Defendant's failure to address the bifurcated discovery issues raised during the Parties' conferrals and the Court's deadline, Plaintiff filed a motion to compel on April 26, 2024. (Dkts. 136, 137.)

---

[2] The Parties were required to restrict their initial discovery requests to those related to Menasha and its possession, control, and dissemination of biometric data as well as whether Plaintiff's experience with providing biometric data was unique to Ron's Staffing. (Dkt. 128.)

5

The Court held a hearing on Plaintiff's motion to compel on June 6, 2024, denying the motion and further narrowing the scope of the bifurcated discovery to whether Plaintiff's biometric data was ever possessed or otherwise obtained by Defendant. (Dkt. 147; *see also* Dkt. 148, Transcript of June 6, 2024, Hearing, pp. 7:8-14; 11:19-22; 14:21-23.) Plaintiff issued his limited third set of written discovery on June 25, 2024, and Defendant responded on July 30, 2024. The Court also provided Plaintiff an opportunity to subpoena Ron's Staffing for this limited information, which he did, requesting both documents and the deposition of its corporate representative. (Dkt. 148, Transcript of June 6, 2024, Hearing, p. 17:14-24.) However, on September 10, 2024, Ron's Staffing informed the Parties it was unable to locate any of the documents requested in the subpoena, including emails, because its IT vendor could only access emails that go back a year. (Dkt. 166.) On September 18, 2024, the Parties conferred regarding issues with Defendant's latest discovery responses and document production, as none of the documents produced pertained to the time period Plaintiff used the biometric timekeeping system at Defendant's facility. At this time, Plaintiff also requested a detailed explanation as to what Defendant had done to investigate and respond to his third set of written discovery. (*See* Exhibit 10, September 19, 2024, to October 11, 2024, Email Correspondence.) Plaintiff took the Rule 30(b)(6) deposition of Ron's Staffing corporate representative on October 15, 2024, in which additional documents were identified responsive to Plaintiff's subpoena but not produced.

The Court held a status hearing on October 23, 2024, in which Defendant informed the Court it had not yet supplemented its discovery. (Dkt. 175, Transcript of October 23, 2024, Hearing, p. 2:12-16.) At the hearing, Plaintiff informed the Court that neither Defendant nor Ron's Staffing has yet to produce a single document pertaining to the time period at issue when Plaintiff used the biometric timekeeping system and further explained the information and documents he

6

requested. (Dkt. 175, Transcript of October 23, 2024, Hearing, p. 3:4-16.) Plaintiff also informed the Court of the need for additional discovery since no relevant documents have been produced by either Ron's Staffing or Defendant, including the need to issue a third-party subpoena to NOVAtime Technology, Inc. ("NOVAtime"), the manufacturer of the biometric timekeeping system used by Plaintiff while working at Defendant's facility, for documents pertaining to the make and model of the biometric timekeeping system, service agreements, and the identity of individuals with access to the NOVAtime portal. (Dkt. 175, Transcript of October 23, 2024, Hearing, p. 16:16-21.) On October 25, 2024, Defendant sent Plaintiff its supplemental objections and answers to Plaintiff's third set of interrogatories and also noted that it stands on its previous responses to Plaintiff's third set of document requests, and did not produce any documents pertaining to the time Plaintiff used the biometric timekeeping system at Defendant's facility. (Dkt. 171.) Defendant also informed Plaintiff, *for the very first time*, that prior to 2020, Menasha (and previously ARI) had an email retention policy of 134 days, and that's the reason for lack of production of any emails.[3] (*Id.*)

The Court held another status hearing on November 5, 2024, at which time Defendant confirmed its email retention policy of 134, whereas emails are automatically deleted. (Dkt. 175, Transcript of November 5, 2024, Hearing, pp. 10:18-25; 11:1-10.) Defendant failed to verify if emails were ever archived. The Court provided Plaintiff an opportunity to issue a subpoena to NOVAtime, once the Parties met and conferred regarding the language and scope. (Dkt. 175, Transcript of November 5, 2024, Hearing, p. 25:7-11.) After a series of failed service attempts,

---

[3] Interestingly, not once did Defendant's previous counsel (*i.e.,* Danielle Kays) ever in her approximately four years representing Defendant mention anything about a 134-day email retention policy. In fact, during the Parties multiple conferrals, Defendant's previous counsel represented that emails were searched, search terms were used, but no responsive documents were located. (*See* Exhibit 11, April 17, 2024, to April 25, 2024, Email Correspondence.)

7

Plaintiff served a subpoena on Ascentis Corporation f/k/a NOVAtime Technology, Inc. ("Ascentis") on January 17, 2025, and also served a subpoena to UKG, Inc. f/k/a Ascentis Corporation f/k/a NOVAtime Technology, Inc. ("UKG") on January 21, 2025. (Dkt. 187.) On February 28, 2025, Ascentis and UKG provided their responses and objections to Plaintiff's subpoenas as well as their document production. (*See* Exhibit 12, NOVAtime Objections and Responses to Subpoena.)

In its production, and for the *first time throughout this litigation*, Ascentis and UKG provided Plaintiff with the type of NOVAtime timeclocks and software used at Defendant's facility. (*Id.*; *see also* Exhibit 13, NOVAtime Document Production (Subpoena).) Ascentis and UKG also produced a document reflecting users with access to the portal and software accompanying the timekeeping system at issue (*i.e.,* where the data collected from the biometric timekeeping system is sent), **including users from ARI / Menasha**. (*See* Exhibit 13, NOVAtime Document Production (Subpoena).)

II. **ARGUMENT**

Despite this case pending for approximately four and a half years, it was not until 14 days ago that Plaintiff was able to finally secure the information, albeit via a third-party subpoena to NOVAtime, he had been requesting from Defendant for years. Although NOVAtime's production was limited (*i.e.,* four total documents produced), the documents conclusively reveal that Defendant, contrary to years of unsubstantiated representations, *did* play an active role in the implementation and use of the biometric timekeeping system at issue and had direct contact with NOVAtime. Plaintiff has been severely prejudiced throughout the discovery process to date, given the lack of production of any relevant documents pertaining to the claims and defenses in this case by Defendant and Defendant's misrepresentations to both the Court and Plaintiff. As a result, this

Court should grant Plaintiff's motion for limited additional discovery, including the production of documents produced in *Thome v. NOVAtime Technology, Inc.,* Case No. 1:19-cv-06256 (N.D. Ill.) pertaining to the biometric timekeeping system at issue, the NOVAtime portal and the relevance of the access credentials, and depositions of up to three witnesses with access to the NOVAtime portal.

### A. The Truth About Defendant's Involvement with the Biometric Timekeeping System.

For four and a half years, Defendant has had adamantly claimed it had absolutely no involvement with the use of the biometric timekeeping system Plaintiff scanned his finger on each day he worked at its facility. These weren't offhanded comments. Defendant consistently advanced this theme through motion practice, discovery conferrals, court hearings, as well as in a sworn statement from its corporate representative, that it had "nothing to do with the time-keeping system" nor did it "collect, capture, purchase, receive through trade, possess, otherwise obtain, disclose, re-disclose, otherwise disseminate, or otherwise have access to the biometric information" of its workers, including Plaintiff. (*See* Exhibit 14, Declaration of Cathy Penrod, at ¶¶ 5, 8.) That just isn't true.

Although Plaintiff was limited in the information he could seek from NOVAtime, the information it did produce conclusively shows Defendant's active involvement with both NOVAtime and the NOVAtime biometric timekeeping system used by Plaintiff each day he worked at Defendant's facility. First, the make and model of the biometric timekeeping system at issue has been identified (*i.e.,* the NOVAtime NT 7000). (*See* Exhibit 12, NOVAtime Objections and Responses to Subpoena, p. 6.)

9

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████████
　　████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
█████████████████████████████
　　　　████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████████████ This is important for several reasons. First, as Ron's Staffing's corporate representative confirmed at her deposition, the portal is where the data collected from the system is sent and individuals with access to the portal are able to access this data. (*See* Exhibit 15, Deposition Transcript of Alyssa Garcia ("Garcia

Dep.") at 40:18-25 (testifying the portal is where individuals can access the data collected by the timekeeping system); 50:4-51:5 (the portal is where the recruiters enter workers personal information which would then be linked to a worker's biometric data once enrolled); 56:7-11; 126:11-20 (the portal is where Plaintiff's data that was collected through his use of the biometric timekeeping system was saved)). Next, despite Ron's Staffing's corporate representative noting that she did not believe anyone from ARI / Menasha had log-in credentials and access to the data saved on the portal, that is proven to be false. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[4] (*See* Exhibit 13, NOVAtime Document Production (Subpoena), UKG_LANDA_0000004.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id*.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This additional information is critical to the claims and defenses here and the Court should grant Plaintiff's motion.

### B. Plaintiff Has Been Unfairly Prejudiced by Defendant's Misrepresentations.

Rule 26(b)(1) provides, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."

---

[4] It is unclear who Diana Favela worked for because Defendant identifies her as a supervisor with Ron's Staffing, but her access credentials refer to an ARI email address (*i.e.,* josegonzalez@ari-packaging.com). (*See* Exhibit 16, Defendant's Second Supplemental Responses to Plaintiff's Third Set of Discovery, at 3, 8 (of Answers to Interrogatories).) According to his LinkedIn page, Jose Gonzalez worked as a maintenance manager at ARI from December 2016 through July 2018 which overlaps with his employment with Menasha from March 2018 through May 2020. (*See* Exhibit 17, Jose Gonzalez LinkedIn.) It appears Jose Gonzalez from ARI / Menasha could also access the portal.

Fed. R. Civ. P. 26(b)(1). The burden is on Defendant to show why requested discovery is improper. *Mann v. City of Chicago*, 2017 WL 3970592, at *2 (N.D. Ill. Sept. 8, 2017). The discovery rules are afforded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Parties are required to respond to discovery completely and accurately; and thus, are required to take reasonable steps to ensure their responses are complete and accurate. *Fautek v. Montgomery Ward & Co., Inc.,* 96 F.R.D. 141, 145 (N.D. Ill. 1982). However, as a result of Defendant's blatant misrepresentations to the Court, discovery was bifurcated and Plaintiff was severely limited to the documents and information he could seek. Now that Defendant's falsehoods have been exposed, this Court should granted Plaintiff's motion and allow for limited additional discovery.

### 1. This Court Should Allow the Production of Relevant NOVAtime Documents from the *Thome* Matter.

As Plaintiff's Counsel has advised the Court, they had another BIPA lawsuit against NOVAtime directly ("NOVAtime lawsuit") that has since been resolved. Many documents produced in the NOVAtime lawsuit are the same as the documents that Plaintiff sought from NOVAtime here, but NOVAtime was unable to locate. The Court noted in its March 6, 2025, minute entry that it concerns about Plaintiff's counsel's access to documents from this case. (Dkt. 189.) ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Thus, until two weeks ago, Plaintiff's Counsel had no way to know which, if any, of the documents produced in the NOVAtime lawsuit had any significance to this case. With this recently acquired information, Plaintiff is now able to identify all documents relating to the NT 7000 device, the software used,

and documents that explain the significance of the portal credentials and is requesting that he be able to use those discovery documents in the matter here.

Plaintiff attempted to secure the information and documents that he is seeking to use from the NOVAtime lawsuit from Defendant first. However, as discussed above and during the numerous discovery status hearings, Defendant failed to produce these relevant documents. Plaintiff then attempted to secure these documents from Ron's Staffing, but again, the documents were not found. Finally, Plaintiff subpoenaed NOVAtime and although some documents were produced, the documents that actually explain the functionality of the biometric timekeeping system, the software, and the portal credential were not located. Now that Plaintiff has the identity of the make / model, software, and portal credentials, he is able to determine the relevant corresponding documents produced in the NOVAtime lawsuit. As courts have held, "the Federal Rules of Civil Procedure do not foreclose collaboration in discovery…." *American Tel. & Tel. Co. v. Grady,* 594 F.2d 594, 597 (1978). And, "[a] district court is in the best position to decide the proper scope of discovery and to settle any discovery disputes." *Gile v. United Airlines, Inc.,* 95 F.3d 492, 495 (7th Cir. 1996). Some of the documents produced in the NOVAtime lawsuit were marked confidential and some were not. However, after a review of the case file, a protective / confidentiality order was never entered. Therefore, as courts have ruled, parties are "in no way preclude[d]" from using nonconfidential information from another case. *Sasu v. Yoshimura,* 147 F.R.D. 173, 176 (1983). And the relevant documents marked confidential will be provided the same protection as all other confidential material produced in this case under the Confidentiality Order entered here. (Dkt. 125.) There is no burden on any Party or non-party and Plaintiff's request is consistent with Fed. R. Civ. P. 26(b)(1) in that the importance at stake in resolving the issue, the

relative access to the relevant information, and the likely benefit outweigh any burden or expense. Therefore, this Court should grant Plaintiff's motion for limited additional discovery.

### 2. Plaintiff Should be Granted Leave to Take No More Than Three Depositions.

Finally, for the first time 14 days ago, individuals from ARI / Menasha with access to the portal were identified. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Defendant (and Ron's Staffing) has led the Court to believe that no such individuals existed. That, again, has proven to be untrue.



. Plaintiff motion for additional limited discovery should be granted.

### CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Honorable Court grant his Motion for Limited Additional Discovery and any further relief this Court deems just and equitable.

Dated: March 14, 2025

Respectfully Submitted,

/s/ Andrew C. Ficzko
Andrew C. Ficzko
James B. Zouras
Ryan F. Stephan
**STEPHAN ZOURAS, LLC**
222 West Adams St., Suite 2020
Chicago, IL 60606
(312) 233-1550
(312) 233-1560 *f*
aficzko@stephanzouras.com
jzouras@stephanzouras.com

rstephan@stephanzouras.com

***Attorneys for Plaintiff and the
Putative Class Members***